2010 UT 20

**FRIENDS OF GREAT SALT LAKE; Utah Waterfowl Association; National Audubon Society; Audubon Society of Utah, including Bridgerland Audubon Society; Great Salt Lake Audubon Society; Red Cliffs Audubon Society; Wasatch Audubon Society; Utah Chapter of the Sierra Club; League of Women Voters of Salt Lake; League of Women Voters of Utah; Utah Airboat Association and Utah Rivers Counsel, Petitioners,**

*v.*

**UTAH DEPARTMENT OF NATURAL RESOURCES, an agency of the State of Utah; Executive Director of the Utah Department of Natural Resources, in his official capacity, Utah Division of Forestry, Fire and State Lands, an agency of the State of Utah, and Director of the Division of Forestry, Fire and State Lands, in his official capacity, Respondents,**

**Great Salt Lake Minerals, Intervenor.**

Nos. 20080147, 20080155.

Supreme Court of Utah.

March 30, 2010.

Joro Walker, Salt Lake City, for petitioners.

Mark L. Shurtleff, Att'y Gen., Brent A. Burnett, Asst. Att'y Gen., Salt Lake City, for respondents.

Steven J. Christiansen, Daniel A. Jensen, David C. Reymann, Cheylynn Hayman, Salt Lake City, for intervenor.

PARRISH, Justice:

## INTRODUCTION

¶ 1 Petitioners, Friends of Great Salt Lake ("Friends"), ask us to review the Final Agency Action, Decision and Orders (the "Order") issued jointly by the executive director ("Executive Director") of the Utah Department of Natural Resources ("DNR") and the director of the Division of Forestry, Fire and State Lands (the "Division"), which rejected Friends' Petition for Declaratory Order, Petition for Consistency Review, and Request for Agency Action (collectively the "Petitions"). Friends seek review of the Division's decision to lease 23,088 acres of the area of the Great Salt Lake known as Clyman Bay to the Great Salt Lake Minerals Corporation ("Mineral Company") and to allow the Mineral Company to expand its use of already-leased areas in Clyman Bay and Bear River Bay. Because the Order did not issue from a formal proceeding, we lack jurisdiction to consider Friends' claims. Therefore, we dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Mineral Company currently operates a large mineral extraction enterprise around the Great Salt Lake. In February 2007, pursuant to the Great Salt Lake Mineral Leasing Plan (the "MLP"),[1] Mineral Company nominated for lease an additional 23,088

---

1. Between 1994 and 1996, in order to facilitate the multiple competing uses of the Great Salt Lake, the Division created the MLP. This plan withdrew all sovereign lands from mineral leasing until those lands were nominated by parties interested in leasing them. More importantly, it designated all of the sovereign lands into four leasing categories with different levels of restrictions. The most permissive category, Category 1, was deemed to have "[n]o significant resource conflicts," and allowed "mineral salt leasing with standard lease stipulations for Great Salt Lake environments." The MLP specifies that lands will be evaluated individually when nominated for lease. In particular, the Division will consider "conformance with the mineral leasing plan[,] ... appropriate tract size, appropriate royalty, leasing instrument, minimum bid, and consultation with appropriate agencies to work out restrictions or stipulations as necessary." In 1997, the DNR and the Division solicited extensive public comment in developing a comprehensive management plan for the Great Salt Lake. As part of the comprehensive management plan, the DNR and Division chose to retain the MLP.

acres of land located in the bed of the Great Salt Lake near Clyman Bay. Mineral Company also notified the Division of its intent to build a series of dykes and evaporation ponds on previously undeveloped areas of leases. it holds in Clyman Bay and Bear River Bay.

¶3 Mineral Company's nomination of the Great Salt Lake sovereign land triggered the Division's obligation to conduct site-specific planning under Utah Administrative Code rule 652–90–300.[2] Accordingly, the Division notified the Utah Resources Development Coordinating Committee (the "RDCC"),[3] which informed various members of the public of the nomination of the additional lands and solicited input about whether additional stipulations or restrictions should be placed on the leasing of those lands. *See* Utah Admin. Code r. 652–90–400(1)(d) (2008). During the RDCC process, Friends submitted comments opposing the lease proposal on the grounds that the Division did not adequately investigate nor properly analyze the environmental impact of the leases on the public trust values. The Division responded to Friends' comments and ultimately chose to nominate the lands for lease. Mineral Company then submitted an application for lease, which was accepted in a Record of Decision ("ROD") issued by the Division on July 2, 2007. The ROD encompasses both the results of the site-specific planning process and the decision to lease the Clyman Bay lands to Mineral Company.

¶4 Friends responded by filing the Petitions to challenge the ROD. The Petitions all allege basically the same misconduct: that the Division failed to comply with the public-trust doctrine when it issued the new Clyman Bay lease and when it considered the expansion of Mineral Company's mineral-extraction enterprise in Clyman Bay and Bear River Bay. As a remedy, each of the Petitions requested that the Division be required to use a more stringent formulation of the public-trust analysis, undertake a more detailed site-specific analysis, and correct its deficiencies in its public-trust and management-planning efforts.

¶5 The Division and Executive Director gathered additional information and then dismissed the Petitions on legal grounds without holding a hearing. They found that Friends were not a party to the adjudication that awarded the mineral leases to Mineral Company and thus could not bring a Petition for Consistency Review, that the Petition for Declaratory Order was not allowed because it was based on disputed facts and would substantially prejudice Mineral Company's rights, and that requests for agency action could not challenge the rights between two other parties.

¶6 Friends filed an appeal from the agency action with the district court and with this court, and filed an additional Petition for Extraordinary Relief with this court in the event that we hold that the Utah Administrative Procedures Act (the "UAPA") provides no avenue for Friends to appeal the ROD. In April 2008, we granted intervenor status to Mineral Company, and all of the Respondents moved to dismiss Friends' appeal to this court on jurisdictional grounds, arguing that because Friends did not appeal a final order from a formal agency adjudication this court did not have jurisdiction to consider their petition. We agree and therefore dismiss this case for lack of jurisdiction.

## ANALYSIS

¶7 We first decide whether we have jurisdiction to hear Friends' appeal from the denial of the Petitions or whether jurisdiction properly lies in the district court. We then determine whether Friends' petition to this

---

2. The Agency denies that it has any site-specific planning obligation because it has completed both a Resource Plan and a Comprehensive Management Plan, but acknowledges that it uses the Resource Development Coordinating Committee as a source "to provide site-specific analysis (i.e. project specific analysis) and stipulations that could be implemented in the management of those lands nominated for lease."

3. The Resource Development Coordinating Committee "(1) assist[s] ... in ... reviewing and coordinating technical and policy actions that may affect the physical resources of the state; and (2) facilitate[s] the exchange of information on those actions among state agencies and other levels of government." Utah Code Ann. § 63J–4–501(1)–(2)(2008).

court for extraordinary relief gives us jurisdiction to consider the merits of their claims.

## I. THE SUPREME COURT DOES NOT HAVE JURISDICTION TO HEAR FRIENDS' APPEAL FROM AN INFORMAL AGENCY PROCEEDING

¶ 8 We must decide whether we have jurisdiction to hear an appeal from the Executive Director's decision to affirm the Division's denial of Friends' Petitions. We have jurisdiction over "final orders and decrees in *formal* adjudicative proceedings originating with ... the executive director of the Department of Natural Resources reviewing actions of the Division of Forestry, Fire, and State Lands." Utah Code Ann. § 78A–3–102(3)(e)(vi) (2008) (emphasis added). Thus, to find that we have jurisdiction to hear this appeal, we must find that the Order issued jointly by the Executive Director and the Division (1) was a final order or decree (2) resulting from a formal adjudication that (3) originated with the Executive Director reviewing a decision of the Division. There is no dispute that the Order was a final order. As a result, the arguments of the parties focus on (1) whether the proceeding originated with the Executive Director, and (2) whether the proceeding from which the Order issued was formal or informal.

### A. *The Order Issued Jointly by the Executive Director and the Division Originated With the Executive Director for Purposes of Jurisdiction*

■ ¶ 9 Friends argue that the Petitions originated with the Executive Director because the Order issued jointly from the Division and the Executive Director. In the alternative, Friends argue that at least their Petition for Consistency Review, which was specifically directed to the Executive Director, qualifies as originating with the Executive Director. Mineral Company contends

that the origination argument is moot because the underlying proceeding was informal and therefore unreviewable by this court in any event. Mineral Company also argues that the Order originated with the Director of the Division who determined that the petition was complete and forwarded it to the Executive Director. Friends assert this argument to be invalid because such an interpretation of the statute would mean that the supreme court would never have jurisdiction over orders issued by the Executive Director because no order could ever "originate" with him. We agree with Friends.

■ ¶ 10 We hold that any order issued by the Executive Director originates with him and is therefore subject to our jurisdiction so long as the proceeding from which the order issued was formal. *See So. Utah Wilderness Alliance v. Bd. of State Lands & Forestry*, 830 P.2d 233, 236 (Utah 1992). The Order at issue in this case clearly states that the Executive Director and the Division issued a joint opinion with regard to the Petitions and does not specify whether some of the Petitions were addressed by the Division as opposed to the Executive Director. We therefore conclude that the Order qualifies as one originating with the Executive Director.

### B. *The Formality of the Review Proceeding Is Determined by the Formality of the Underlying Proceeding*

■ ¶ 11 We now turn to the question of whether the underlying proceeding was formal or informal. We conclude that formality designations for agency proceedings apply only to original proceedings and not to the agency review of those proceedings. UAPA clearly designates all adjudications as formal unless otherwise specifically designated by agency rule. Utah Code Ann. § 63G–4–202(2). By Division rule all adjudicative proceedings are initially designated as informal. Utah Admin. Code R. 652–8–200 (2008).[4]

4. Rule 652–8–200 states:
1. All requests for agency adjudications are initially designated as informal adjudications. Requests for action include applications for leases, permits, easements, sale of sovereign lands, exchange of sovereign lands, sale of forest products and any other disposition of resources under the authority of the agency or other matter where the law applicable to the agency permits parties to initiate adjudicative proceedings.
2. All adjudications commenced by the agency shall be initially designated as informal adjudications. Agency adjudications include actions relating to leases, permits, easements,

But UAPA does not clearly state whether the appeal from an adjudicative proceeding constitutes a separate adjudicative proceeding to be designated as formal or informal, whether the appeal retains the character of the underlying proceeding, or whether it is neither formal nor informal, but merely a review proceeding whose formal or informal nature has no bearing on which court has jurisdiction. *See* Utah Code Ann. § 63G–4–301. Rule 652–8–200 designates all requests for agency adjudication, including applications for lease, as informal. Thus, the underlying adjudication awarding the Clyman Bay lease to Mineral Company was an informal proceeding. There is no serious dispute on this issue. Friends clearly understood that the underlying proceeding was informal as demonstrated by their communication with the Division. Instead, Friends' argument rests on the nature of the appeal proceeding.

¶ 12 Friends argue that the review proceeding is separate and does not retain the formality level of the underlying proceeding. Mineral Company argues that UAPA doesn't require the agency to designate the formality level of a review proceeding, but rather that the formality is determined by the substance of the review. The Division argues that review of an adjudicative proceeding does not alter the formality of the underlying proceeding because the review procedure for both formal and informal adjudications is the same. The Division's position is more consistent with UAPA and our precedent.

**1. The Structure of UAPA Suggests That Agency Review Proceedings Do Not Constitute New Proceedings**

■ ¶ 13 Though UAPA requires that all adjudicative proceedings be either designated informal or formal, it imposes no such requirement on the administrative review of underlying proceedings. *See* Utah Code Ann. §§ 63G–4–201 to –302. Part Two of UAPA specifically outlines the procedures an agency must follow when conducting either formal or informal adjudicative proceedings. *Id.* §§ 63G–4–201 to –209. Part Three addresses the procedures that agencies must follow when reviewing adjudicative proceedings. *Id.* §§ 63G–4–301 to –302. Part Three makes no mention of the formality or informality of the underlying proceeding, but it does establish rules similar to those established for formal and informal adjudicative proceedings such as rules governing the production of documents. *Id.* § 63G–4–301. Friends assert that a new proceeding commences when a party seeks agency review of an adjudication outcome. But this notion is inconsistent with UAPA and conceptually at odds with the generally accepted idea that an appeal is a continuation of the underlying proceeding.[5]

**2. Our Caselaw Suggests We Look to the Formality of the Underlying Proceeding to Determine Jurisdiction**

■ ¶ 14 UAPA requires that final formal administrative adjudicative proceedings be reviewed by this court or the court of appeals and final informal administrative adjudicative proceedings be reviewed by the district court. *Id.* §§ 63G–4–402(1), 403(1). This court will not hear appeals from informal adjudicative proceedings and has not, in the past, looked at the nature of the administrative appeal to determine formality. In *Southern Utah Wilderness Alliance*, the Southern Utah Wilderness Alliance ("SUWA") petitioned the Board of State Lands to review the Division's sale of eighty acres of state trust lands. 830 P.2d at 234. When the Board denied its petition on timeliness grounds, SUWA appealed to this court rather than the district court. *Id.* Similar to this case, the Board dismissed SUWA's petition on procedural grounds rather than considering the merits of the petition. On appeal, we held that our jurisdictional statute gave us authority over only final orders and decrees from formal adjudications. *Id.* at 236. In concluding that we lacked jurisdic-

sales contracts and other agreements and contracts under the authority of the agency.

**5.** Friends also argue that they were not able to participate in the underlying proceeding so this is an entirely new proceeding. Even assuming this were true, it does not bolster their jurisdictional argument because a new proceeding initiated with the Division would also be designated informal under rule 652–8–200 of the Utah Administrative Code.

tion, we assumed that the Board's decision on appeal retained the same formality level as the underlying proceeding.

### 3. The Executive Director Did Not Implicitly or Explicitly Convert the Petitions to a Formal Proceeding on Appeal

¶ 15 The Executive Director has the authority under certain circumstances to convert an informal proceeding to a formal one and vice versa any time before a final order is issued. Utah Code Ann. § 63G–4–202(3). To determine whether the Executive Director intended to convert a proceeding, we look at any statements the Executive Director made and actions he took to alter the proceeding. Two court of appeals cases suggest that regardless of the official designation of formality attached to the adjudication via rule or statute, this court's jurisdiction rests on the actual substance of the proceeding. *See Bourgeous v. Dep't of Commerce*, 1999 UT App 146, 981 P.2d 414; *Alumbaugh v. White*, 800 P.2d 825 (Utah Ct.App. 1990)(per curiam). But this approach directly contradicts the wording of the statute, which requires that the agency designate the formality of the adjudicative proceeding. Utah Code Ann. § 63G–4–202.

¶ 16 In *Alumbaugh*, the court of appeals specifically refused to apply an agency rule that designated all adjudicative proceedings as formal because a summary dismissal could not possibly constitute a formal proceeding. 800 P.2d at 825. In *Bourgeous* the court of appeals must have concluded that the underlying proceeding was informal because it remanded to the district court for a trial de novo, but there is no discussion about whether the formality designation came via rule or by analysis of the substance of the proceeding. 1999 UT App 146, ¶ 14, 981 P.2d 414. Insofar as there is a suggestion in these cases that the statutory or rule-based formality designation of an adjudicative proceeding can be altered based on its substance rather than the intent of the executive director of the agency, we disagree. But when determining whether the executive director of an agency intended to transform the formality designation of a proceeding, we may look to the substance of the proceeding to interpret the executive director's intent.

¶ 17 With regard to the Order in this case, it is clear that the Executive Director did not intend to transform the proceeding from informal to formal. The explicit wording of the Order contradicts any intent to transform the proceeding from informal to formal, and the substance of the proceeding does not suggest in any way that the executive director implicitly converted the proceeding to a formal adjudication.

¶ 18 First, the Order does not suggest that the Executive Director or the Division meant to transform the adjudication from informal to formal. To the contrary, the Order notifies the parties that they should petition for judicial review with the district court. While the agency's determination of jurisdiction on review would not be binding if it were based on an incorrect interpretation of the law, the Order indicates that the Executive Director understood the appeal to be from an informal adjudication and that the review process was informal as well.

¶ 19 Second, the substance of the review does not indicate that the proceeding was conducted according to either the formal or informal procedures outlined in Part Two of UAPA. Friends point to the fact that the Division and Executive Director allowed Mineral Company to intervene in the Petitions as evidence that the review proceeding was conducted formally, since UAPA forbids intervenors in informal proceedings. Utah Code Ann. § 63G–4–203(1)(g). Mineral Company also points to the summary dismissal and likens it to the two paragraph memorandum opinion issued in *Alumbaugh*, in which the court of appeals refused to apply an agency rule designating proceedings as formal when the Career Services Review Board summarily dismissed the petitioner's grievance. We find neither of these arguments persuasive. If allowing Mineral Company to intervene in Friends' Petitions during an informal adjudicative proceeding was in error, converting the proceeding from informal to formal is not the appropriate remedy for that error. On the other hand, a summary dismissal is not necessarily indicative of an intent to conduct an informal proceeding. Certainly an agency

could adhere to the requirements of a formal adjudication and still determine that the claims of one party are baseless.

¶ 20 We conclude that the Executive Director did not explicitly or implicitly convert the proceeding from an informal proceeding to a formal proceeding on appeal. The text of the Order makes clear that no explicit transformation took place, and the substance of the review proceeding does not indicate that the Executive Director intended to conduct a formal proceeding on review.

### 4. Friends Wrongly Suggest We Have Jurisdiction Because the Only Issues Presented on Appeal Are Legal Issues

¶ 21 Alternatively, Friends suggest that because the policy reasons underlying UAPA's jurisdictional choices are met in this situation, we can assume jurisdiction over Friends' appeal. The thrust of this argument is that the issues being appealed in this case are all legal and would not benefit from further development of the record below. In support of this argument, Friends cite to a footnote in *Hales v. Industrial Commission of Utah,* where the court of appeals stated that "[n]o purpose would be served by a trial de novo in the district court where the relevant facts are not in dispute and the issue is solely one of law." 854 P.2d 537, 539 n. 2 (Utah Ct.App.1993). But *Hales* explicitly involved our review of a formal adjudicative proceeding. *Id.* The supreme court only has jurisdiction over "final orders and decrees in formal adjudicative proceedings." Utah Code Ann. § 78A–3–102(3)(e). Thus, regardless of whether it would be more efficient for us to review legal issues arising from informal adjudicative proceedings, we lack the authority to do so.

### II. WE CANNOT GRANT A PETITION FOR EXTRAORDINARY RELIEF BECAUSE FRIENDS HAVE NOT EXHAUSTED THEIR DIRECT APPEALS

¶ 22 Friends argue that because we have jurisdiction to consider their request for extraordinary relief under Utah Code section 78A–3–102(2), we have the jurisdiction to determine their underlying claim.

"Where no other plain, speedy and adequate remedy is available, a person may petition the court for extraordinary relief...." Utah R. Civ. P. 65B(a). To obtain extraordinary relief under rule 65B(d), a petitioner must show two things: (1) "a clear legal right to the performance of the act demanded," and (2) "a plain duty of the officer, board, or other tribunal to perform as demanded." *Garcia v. Jones,* 29 Utah 2d 409, 510 P.2d 1099, 1100 (1973) (internal quotation marks omitted). Even if a petitioner can meet both prongs of the test, this court has the discretion to deny extraordinary relief. *Renn v. Utah State Bd. of Pardons,* 904 P.2d 677, 683 (Utah 1995).

¶ 23 Before we can address a petition for extraordinary relief, the petitioning party must have "exhaust[ed] all available avenues of appeal." *Utah County v. Alexanderson,* 2005 UT 67, ¶ 9, 123 P.3d 414. In *Alexanderson,* Utah County lost at the administrative level and, rather than directly appealing to the district court, chose to file a petition for extraordinary relief. *Id.* ¶ 2. In reversing the district court's decision to grant extraordinary relief, we made clear that "[t]he opportunity to appeal an administrative decision to the district court constitutes a plain, speedy and adequate remedy," and that "an extraordinary writ is not a proceeding for general review." *Id.* ¶ 6 (internal quotation marks omitted).

¶ 24 At this time, Friends have a remedy at the district court. Unless and until the district court and this court rule that the Order was properly dismissed, Friends have not exhausted their appeals and do not have grounds to bring a petition for extraordinary relief.

### CONCLUSION

¶ 25 Because the Order issued by the Executive Director reviewed an informal agency proceeding, we lack jurisdiction to hear Friends' appeal from that order. Further, we cannot address Friends' petition for extraordinary relief because Friends have not exhausted the direct appeal process. Accordingly, we dismiss the appeal and deny the petition for extraordinary relief.

¶ 26 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS and Justice NEHRING concur in Justice PARRISH's opinion.