*This opinion is subject to revision before final publication in the Pacific Reporter.*

**2017 UT 15**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

FRIENDS OF GREAT SALT LAKE, et al.,[1]
*Appellants,*

*v.*

UTAH DEPARTMENT OF NATURAL RESOURCES, et al.,[2]
*Appellees,*

and

GREAT SALT LAKE MINERALS CORPORATION,
*Intervenors/Appellees.*

No. 20131050
Filed March 15, 2017

On Direct Appeal

Third District, Salt Lake
The Honorable Deno G. Himonas
No. 080902785

---

[1] The other appellants are Utah Waterfowl Association, National Audubon Society, Audubon Society of Utah, including Bridgerland Audubon Society, Great Salt Lake Audubon Society, Red Cliffs Audubon Society, Wasatch Audubon Society, Utah Chapter of the Sierra Club, League of Women Voters of Salt Lake, League of Women Voters of Utah, Utah Airboat Association, and Utah Rivers Council.

[2] The other appellees are the Executive Director of the Utah Department of Natural Resources, in his official capacity, Utah Division of Forestry, Fire and State Lands, and the Director of the Division of Forestry, Fire, and State Lands, in his official capacity.

Attorneys:

Joro Walker, Charles R. Dubuc, Salt Lake City, for appellants

Sean D. Reyes, Att'y Gen., Brent A. Burnett, Fredric J. Donaldson, Norman K. Johnson, Michael S. Johnson, Douglas J. Crapo, Assist. Att'ys Gen., for appellees Utah Dep't of Nat. Res., et al.

Steven J. Christiansen, David C. Reymann, Cheylynn Hayman, Megan J. Houdeshel, Salt Lake City, for appellee Great Salt Lake Minerals Corp.

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, JUSTICE DURHAM, JUDGE VOROS, and JUDGE CHRISTIANSEN joined.

Having recused themselves, JUSTICE HIMONAS and JUSTICE PEARCE do not participate herein; Court of Appeals Judges J. FREDERIC VOROS and MICHELE M. CHRISTIANSEN sat.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1  This case involves a series of legal challenges to the decision of the Division of Forestry, Fire and State Lands (Division) granting a mining lease covering a small portion of the Great Salt Lake. Plaintiffs-appellants, collectively known as Friends of Great Salt Lake (Friends), sought to halt the lease in various requests and petitions submitted to the Division or to the Utah Department of Natural Resources (Department). The agencies rejected them all. Friends then challenged those rejections in the district court. And in the district court proceedings Friends also sought leave to amend its complaint to raise additional constitutional and statutory arguments.

¶2  The district court affirmed the rejection of Friends' requests and petitions, denied in part Friends' attempt to amend its[3]

---

[3] "Friends of Great Salt Lake" is singular in the sense that a legal entity is an "*it*." *See* BRYAN A. GARNER ET AL., THE REDBOOK: A MANUAL ON LEGAL STYLE 148 (2d ed. 2006) (in providing an

(continued…)

complaint, and later dismissed the remaining arguments on summary judgment. Friends filed this appeal. It alternatively sought extraordinary relief in this court. We affirm in large part. And we deny Friends' request for extraordinary relief. Yet we reverse on one narrow question: We conclude that the Division was required to engage in "site-specific planning" as a prerequisite to the issuance of the record of decision approving the lease application in question, *see* UTAH ADMIN. CODE r. 652-90-300(2) (2007), and remand to allow the Department to decide on the appropriate remedy for the failure to perform such planning.

I

A

¶3   In 1996, the Division created a resource management plan for the Great Salt Lake. This "Mineral Leasing Plan for the Great Salt Lake" divided the lake into four leasing zones, with lands in all zones foreclosed from leasing until nominated by outside parties. The first zone—and the only one relevant here—was labeled "Open." This designation meant that "[n]o significant resource conflicts [were] identified." It also indicated that the area would be "[o]pen to hydrocarbon or mineral salt leasing with standard lease stipulations for Great Salt Lake environments."

¶4   One year later, the Division began the process of developing a comprehensive management plan for the Great Salt

---

example of pronoun agreement, stating that a company is an "it"). We treat it as such in this opinion, while recognizing that the term may appear to be plural, particularly to the extent it has been used in this litigation as a collective shorthand encompassing not just Friends of Great Salt Lake, but other plaintiffs-appellants (Utah Waterfowl Association, National Audubon Society, Audubon Society of Utah, Bridgerland Audubon Society, Great Salt Lake Audubon Society, Red Cliffs Audubon Society, Wasatch Audubon Society, Utah Chapter of the Sierra Club, League of Women Voters of Salt Lake, League of Women Voters of Utah, Utah Airboat Association, and Utah Rivers Council).

Lake, a process that included re-examining the previous year's mineral leasing plan. From 1998 to 1999, the Division invited public participation in formulating the new comprehensive management plan and received comments from interested parties, including some members of Friends. In 2000, the Division enacted a comprehensive management plan, which also incorporated the 1996 resource management plan.

¶5 Seven years later, in February 2007, the Great Salt Lake Minerals Corporation (Corporation) nominated 23,000 acres for lease. This land fell under the "Open" zone of the resource management plan. In April, the Division invited the public to comment on what stipulations and restrictions should be applied to the lease. Numerous comments were submitted, including from Friends. In May, the Division opened up the nominated acreage to competitive bids. The Corporation's bid was accepted.

¶6 In early July 2007, the Division released a record of decision detailing the grounds for its decision to grant the Corporation the lease. And the Division concluded that granting the lease would not violate the comprehensive management or mineral leasing plans.

B

¶7 Friends made three parallel, simultaneous attempts to halt approval of the Corporation's mining lease on the Great Salt Lake: (1) it petitioned the Department for "consistency review" of the Division's record of decision regarding the lease, asserting that the decision ran afoul of the state public trust doctrine and the Division's planning regulations; (2) it filed a request for agency action with the Division's director, asking the Division to "redo" its analysis or "undertake site-specific analysis" in furtherance of the Division's responsibilities to protect the public trust, and to determine how the leases should be changed and "implement those changes," *Request for Agency Action* at 3; and (3) it petitioned the Division for an agency declaratory order "on the correct

applicability" of article XX, section 1 of the Utah Constitution,[4] Utah Code section 65A-10-1(1),[5] and the Division's Sovereign Land Management Planning regulation[6] relating to the Division's record of decision.

¶8 In January 2008, the Division's Director and the Department's Executive Director consolidated the request and two petitions and issued a single agency order denying all three. The petition for consistency review and request for agency action were denied on the ground that Friends wasn't a party to the lease application; the order concluded that the Utah Administrative Procedures Act (UAPA) prevents non-parties from intervening in informal adjudications. The petition for a declaratory order was denied for three reasons: (1) granting it would substantially prejudice the Corporation's rights without its consent, (2) the petition improperly relied on disputed facts, and (3) the petition sought a declaratory order on what was not yet an executed contract. But the directors stayed the execution of the lease to give Friends a chance to request an amendment to the 2000 comprehensive management plan.

¶9 Friends responded in three ways. First, Friends petitioned the Division to amend the comprehensive management plan based on the same arguments it had put forth in its previous

---

[4] "All lands of the State . . . are declared to be the public lands of the State; and shall be held in trust for the people, to be disposed of as may be provided by law, for the respective purposes for which they have been or may be granted, donated, devised or otherwise acquired." UTAH CONST. art. XX, § 1.

[5] "The division is the management authority for sovereign lands, and may exchange, sell, or lease sovereign lands but only in the quantities and for the purposes as serve the public interest and do not interfere with the public trust." UTAH CODE § 65A-10-1(1).

[6] UTAH ADMIN. CODE r. 652-90 (entitled "Sovereign Land Management Planning"; "set[ting] forth the planning procedures for natural and cultural resources on sovereign land as required by law," id. r. 652-90-200).

petitions and request. Second, it appealed the directors' denial of the initial petitions and request to district court.[7] Finally, Friends sought a stay of the issuance of the lease to the Corporation.

¶10 The Division's director denied the request to amend the comprehensive management plan amendment under Utah Administrative Code Rule 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 (2007), a rule requiring "unforeseen circumstances" to sustain an amendment to a comprehensive management plan. In the director's view, Friends had identified no "unforeseen circumstances" that were not addressed in the original comprehensive management plan; instead Friends put forth only its disagreements with the plan. The director also noted that the 2000 comprehensive management plan would be reviewed in 2010 and invited Friends to participate in that process.

¶11 The Division also denied Friends' stay request. It concluded that construction could not occur until the Corporation received a Clean Water Act permit authorizing development.

¶12 The Division executed the lease with the Corporation a day later. And one month after that, the Department's Executive Director affirmed the Division director's denial of the plan amendment and lease stay requests.

¶13 Friends responded by amending its complaint in the district court. The amended complaint sought judicial review of the denial of the petition to amend the comprehensive management plan. At that point the Corporation moved to intervene in the district court proceedings. That motion was granted, and the Corporation thereafter filed a motion for partial summary judgment on the claims related to the two original petitions and the request (a motion echoed by the Division a few

---

[7] Friends also sought a direct appeal and petitioned this court for extraordinary relief. We dismissed for lack of jurisdiction and failure to exhaust avenues for judicial review in the district court. *Friends of Great Salt Lake v. Utah Dep't of Nat. Res. (Friends I)*, 2010 UT 20, ¶ 25, 230 P.3d 1014.

months later). Friends then filed a cross-motion for partial summary judgment.

¶14 The district court granted the partial summary judgment motions of the Corporation and the Division and denied the cross-motion filed by Friends. In so doing the court affirmed the directors' decision, rejecting Friends' original petitions and request on several grounds. First, the district court rejected Friends' argument that it was entitled to challenge the record of decision as an "interested part[y]" commenting on a site-specific plan under Utah Code section 65A-2-4(1). In so doing, the court found that the record of decision proceeding was an adjudication, not a proceeding involving a "state land management plan[]" under section 65A-2-4(1).[8] And because Friends was not a party to the Corporation's lease application to the Division, the court concluded that it lacked authority to file a petition for consistency review.[9]

¶15 The court also concluded that the Division's rules don't allow non-parties to a lease to collaterally challenge lease decisions. And it held that the request for agency action failed on

---

[8] The district court held that the record of decision "proceedings concerned the lease application under the existing state management plans—the [Mineral Leasing Plan], a resource plan, and the . . . comprehensive management plan. . . . The [record of decision] was an adjudicatory and not [a] planning decision." *Memorandum Decision and Ruling*, at 5 (Sept. 10, 2010).

[9] Friends' petition for consistency review sought review of the record of decision "for consistency with Utah's Public Trust Doctrine and with the Division's Sovereign Land Management Planning regulation." *Petition for Consistency Review*, at 1 (July 23, 2007). "Consistency Review" involves a petition to review "the division action for consistency with statutes, rules, and policy" filed by "any party aggrieved by a division action directly determining the rights, obligations, or legal interests of specific persons outside of the division." UTAH ADMIN. CODE r. 652-9-100 & -200(1).

that basis. Because intervention is not allowed in informal adjudications under Utah Code section 63G-4-203(g), moreover, the court rejected Friends' attempt at intervention in the informal adjudication. Finally, the court noted that UAPA prevents an agency from issuing a declaratory order if (1) the order is based on disputed facts; or (2) the order would substantially prejudice a party's rights without its consent. *See* UTAH CODE § 63G-4-503. And the court dismissed the declaratory judgment claim because it found both disputed facts and a likelihood of substantial prejudice, especially given that the order sought by Friends challenged existing leases the Corporation had held for years.

¶16 Friends responded by moving to amend its complaint a second time. In this proposed second amended complaint, Friends sought to challenge the Division's record of decision. It also sought to assert claims under the public trust doctrine, for breach of fiduciary duty, and for infringement of its alleged constitutional rights—under the federal Due Process Clause, the Open Courts Clause of the Utah Constitution, and the Separation of Powers Clause of the Utah Constitution. In addition, Friends also sought declaratory judgments that (1) the comprehensive management plan didn't require the Division approve the Corporation's lease if it was in compliance; (2) Friends is entitled to direct judicial review of the record of decision; and (3) the record of decision violates the public trust doctrine.

¶17 The district court refused to allow the amended complaint to the extent it sought to assert constitutional claims (due process, open courts, separation of powers) or a declaratory judgment claim recognizing a right to direct judicial review of the record of decision. It did so on the ground that those claims weren't preserved in the proceedings before the Division and because UAPA doesn't allow direct judicial review of a record of decision. For these reasons the district court found that the proposed

amendments would be "futile." *Memorandum Decision*, at 6. (June 9, 2011).[10]

¶18 In addition, the district court found it "axiomatic that '[o]nly those issues that were brought to the factfinder's attention at the administrative level may be litigated in the de novo review in the district court.'" *Id.* (quoting *Taylor-West Weber Water Improvement Dist. v. Olds*, 2009 UT 86, ¶ 12, 224 P.3d 709). Thus, the district court held that the constitutional claims are "deemed waived and may not be raised for the first time on appeal." *Memorandum Decision*, at 6 (June 9, 2011).[11] It also reached a similar conclusion as to Friends' attempt to challenge the record of decision through a declaratory judgment claim. It held that it lacked jurisdiction to review the record of decision on a declaratory judgment claim.

¶19 Initially, the court allowed Friends to amend its complaint to add the other claims (public trust, fiduciary duty, and declaratory judgments that the comprehensive management plan isn't controlling and the record of decision violates the public

---

[10] *See Jensen v. IHC Hosps., Inc.*, 2003 UT 51, ¶ 139, 82 P.3d 1076 (holding that rule 15(a) of our rules of civil procedure "does not require that leave be given 'if doing so would be futile'" (citation omitted)).

[11] The district court also considered the standards set forth in our caselaw for leave to amend under civil rule 15(a). *See, e.g.*, *Daniels v. Gamma W. Brachytherapy, LLC*, 2009 UT 66, ¶ 58, 221 P.3d 256 (holding that grounds for denying a motion to amend a complaint include a finding that the requested amendment is "untimely, unjustified, [or] prejudicial"). Under these standards, the court noted its "concern that Friends has not satisfied the justification and timeliness factors." *Memorandum Decision* (June 9, 2011), at 5. But because the Corporation had not addressed these factors in its opposition to the motion to amend, and because Friends didn't have "the opportunity to respond to the concerns raised by the Court," the court ultimately "presume[d] that the . . . factors ha[d] been satisfied." *Id.*

trust). But it ultimately reversed course. After further briefing and a motion to dismiss, the district court concluded that it lacked subject matter jurisdiction over these claims as well. *Minute Entry Ruling*, at 1 (April 10, 2012).

¶20 The district court concluded that its jurisdiction in this proceeding was limited to *review* of the underlying informal adjudication. Because Friends sought a collateral attack on the underlying adjudication, the court concluded that it lacked jurisdiction. And it dismissed the remaining claims on that basis.

¶21 A period of inactivity ensued. This led the district court to issue an order to show cause demanding that the parties explain why the case shouldn't be dismissed for failure to prosecute. Friends then moved for partial summary judgment on its remaining claim—the challenge to the denial of its attempt to have the 2000 comprehensive management plan amended. Shortly thereafter the Division adopted new comprehensive management and mineral leasing plans. With that in mind, the district court dismissed Friends' final claim as moot since the new plans superseded the 2000 plan that Friends was petitioning the Division to alter. Friends then filed a timely appeal.

II

¶22 Friends' appeal presents three sets of issues: (1) whether the district court erred in affirming the directors' order rejecting Friends' petition for consistency review, request for agency action, and petition for an agency declaratory order; (2) whether the district court erred in denying Friends' attempt to amend its complaint and in dismissing its remaining claims on summary judgment; and (3) whether the district court erred in holding that Friends' appeal of the denial of its request to amend the 2000 comprehensive management plan was moot.

¶23 We reverse the dismissal of the petition for consistency review (to a limited extent) but affirm on all other issues. We also deny Friends' collateral petition for extraordinary writ.

### A. Petition for Consistency Review, Request for Agency Action, and Petition for Declaratory Order

¶24 Friends asserted three challenges to the lease in late July 2007. First, it filed a request for agency action with the Division's Director. Second, Friends filed a petition for a declaratory order with the Division's director. And third, it filed a petition for consistency review with the Executive Director of the Department. The directors jointly denied all three, and the district court upheld the denial. We affirm with respect to Friends' request for agency action and petition for declaratory order, but we reverse (to a limited extent) the dismissal of the petition for consistency review.

1.    Petition for Consistency Review

¶25  In its petition for "consistency review" Friends alleged that the Division failed to engage in "site-specific planning" as required under governing regulations. That petition was denied by both the Department and the district court on statutory standing grounds. Both the Department and the district court concluded that the record of decision amounted to only an informal adjudication, to which Friends was not a party, and thus that Friends lacked statutory standing to challenge it. *See* UTAH CODE § 65A-1-4(4)(a). In so concluding, the Department and the district court rejected Friends' assertion that the record of decision necessarily encompassed "site-specific planning" by the Division under Utah Administrative Code Rule 652-90-300(2).

¶26 Friends challenges these determinations on this appeal. It asserts that the Division was required to engage in site-specific planning under the governing regulations. And it accordingly concludes that the district court erred in dismissing its petition for consistency review on statutory standing grounds.

¶27 We agree and reverse—in part. First, we consider the threshold question whether the Division was required to engage in site-specific planning under the applicable provisions of the Utah Administrative Code. On this issue, we agree with Friends and reject the district court's (and the Department's) analysis. We hold that the applicable rules triggered an obligation of site-specific planning by the Division under the circumstances of this case. Second, we assess Friends' standing under the governing

rules as we interpret them. And we conclude that Friends has standing to pursue its petition for consistency review to a limited degree—to the extent its petition challenges the Division's refusal to engage in site-specific planning, but not to the extent it involves a decision to approve the lease sought by the Corporation.

a. The Governing Rules

¶28 The Division, the Department, and the district court concluded that governing regulations did not require site-specific planning in connection with the lease application. That determination presents a question of law—concerning the interpretation of governing regulations. We address that question *de novo*, yielding no deference to the agency's or district court's decision. *See Ellis–Hall Consultants v. Pub. Serv. Comm'n*, 2016 UT 34, ¶¶ 29–33, 379 P.3d 1270 (identifying separation of powers concerns and other reasons for affording no deference to agency interpretations of regulations).

¶29 The governing provision of the Administrative Code states that "[s]ite specific planning shall be initiated . . . by . . . an application for a sovereign land use, or . . . the identification by the division of an opportunity for commercial gain in a specific area." *Id.* r. 652-90-300(2) (2007).[12] The "shall" formulation indicates mandatory action. Thus, this provision requires site-

---

[12] All citations are to the 2007 version of the Administrative Code. That is the version that was in place at the time of the actions at issue on this appeal. And we find no basis for crediting subsequent amendments, such as the provision requiring that site-specific planning be completed only "[i]n the absence of a comprehensive management plan or a resource management plan. . . ." UTAH ADMIN. CODE r. 652-90-300(3) (2016). The Corporation urges us to give this amendment retroactive effect on the ground that it merely clarifies the meaning of the original regulation. But we have repudiated that as a basis for rebutting the presumption against retroactivity. *See Waddoups v. Noorda*, 2013 UT 64, ¶ 9, 321 P.3d 1108. And we reject the Corporation's argument on that basis.

specific planning each time the Division identifies an opportunity for commercial gain or receives an application for a sovereign land use. And there is nothing in the rule that limits this requirement or provides exceptions to it.

¶30 That provision was implicated here. The Corporation submitted an application to the Division "propos[ing] to lease . . . sovereign land located" in the Great Salt Lake in order "to expand [its] mineral operations." *Corporation's Brief Addendum G* at 2. And upon receipt of the Corporation's application, the Division became aware of an opportunity for commercial gain. *See* UTAH ADMIN. CODE r. 652-30-400 (requiring the Division to "receive at least fair market value for surface leases"); *id.* r. 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(3) (requiring the Division to obtain a royalty of at least $10,000 for mineral leases within the Great Salt Lake). The application for the lease was also an application for a sovereign land use. *See id.* r. 652-3-300 ("Application for the . . . use of sovereign lands or resources, shall be on forms provided by the division."); *id.* r. 652-3-400 ("Until a division executed . . . lease, permit, or right is delivered or mailed to the successful applicant, applications for the . . . use of sovereign lands or resources shall not convey or vest the applicant with any rights."). Thus, although either of the conditions identified in rule 652-90-300 is sufficient to trigger the Division's responsibility to conduct site-specific planning, both occurred in this case. And site-specific planning was accordingly required.

¶31 The Corporation points to two provisions of the administrative code in support of its contrary conclusion. But we find neither sufficient to undermine our view of rule 652-90-300. The first provision cited by the Corporation provides that "[o]ne or more of the following plans . . . shall be implemented" for sovereign land: "(1) Comprehensive management plans; (2) Site-Specific plans; (3) Resource plans." *Id.* r. 652-90-200. In the Corporation's view the "[o]ne or more of the following" formulation implies that the completion of one of these forms of planning obviates any need to engage in any other. And because the Division has already implemented a comprehensive management plan and a resource plan for the Great Salt Lake, the Corporation claims that any requirement of site-specific planning

is obviated under rule 652-90-200. Yet we find no tension between this provision and rule 652-90-300. The latter, as noted, requires site-specific planning to be "initiated . . . by . . . an application for a sovereign land use, or . . . the identification by the division of an opportunity for commercial gain in a specific area." *Id.* r. 652-90-300(2). And the former rule does not indicate that *only one* plan is required. It says that "[o]ne or more" of the listed types of plans is required, and the "or more" formulation leaves open the possibility that multiple plans may be required.

¶32 The structure of the rules reinforces this conclusion. Rule 652-90-200 is followed immediately by rule 65-90-300, and the latter sets forth circumstances in which each of the different types of plans must be initiated. *Id.* r. 652-90-300 ("[C]omprehensive planning process is initiated by the designation of a planning unit . . . . Site-specific planning shall be initiated either by (a) an application for a sovereign land use, or (b) the identification . . . of an opportunity for commercial gain in a specific area . . . . Resource management planning is initiated by identification . . . of a need for such a plan."). Thus, only one type of planning may well be required in certain circumstances. But in other circumstances more than one plan will be necessary. The number and type of plans required is dictated by the occurrence of triggering events set forth in rule 652-90-300. Here there was an event triggering the requirement of site-specific planning. And under the rules it is irrelevant that a comprehensive management plan and a resource plan had already been implemented, as those plans were triggered by other events.

¶33 The second provision cited by the Corporation provides that "[a]ll requests for agency adjudications are initially designated as informal adjudications," and that "[r]equests for action include applications for leases, permits, easements . . . and any other disposition of resources." *Id.* r. 652-8-200. The Corporation reads this rule to mean that a request for a lease requires *only* an informal adjudication. Under the Corporation's view, the lease in this case triggered only an informal adjudication and thus cannot require a site-specific plan. But this reading would effectively nullify the regulatory requirement that site-specific planning "shall be initiated" when "an application for a

sovereign land use" is received by the Division. *See id.* r. 652-90-300(2)(a).

¶34 If an "application for leases, permits, easements" or "other disposition of resources," *id.* r. 652-8-200, never requires site-specific planning, then the terms of rule 652-90-300(2) will never be implicated: An "application for a sovereign land use," *id.* r. 652-90-300(2)(a), would never trigger a site-specific planning obligation.[13] That cannot be. Such an interpretation "runs afoul of the settled canon of preserving independent meaning for all [regulatory] provisions." *VCS, Inc. v. Utah Cmty. Bank*, 2012 UT 89, ¶ 18, 293 P.3d 290. We reject the Corporation's argument on that basis.

b. Standing

¶35 Our interpretation of the governing rules forecloses the district court's basis for concluding that Friends lacks standing to pursue its petition for consistency review. Because the Division was required to engage in site-specific planning, we cannot endorse the district court's determination that the record of decision did not logically encompass a refusal to engage in such planning. Instead we must consider the record of decision on its face—to assess whether and to what extent it addressed matters that Friends has standing to challenge.

¶36 In so doing, we agree with Friends in part. On one hand, we do not view the record of decision as a reflection of a site-specific planning decision by the Division. So we reject Friends' position that it had standing to challenge the record of decision in its entirety. And we note that there are aspects of the record of

---

[13] As a practical matter, it appears that every application for a sovereign land use would take the form of an application for a lease, an easement, or at least a permit. *See* BLACK'S LAW DICTIONARY (9th ed. 2009) (defining "permit" as "[a] certificate evidencing *permission*; a license" (emphasis added)). And the Corporation has not demonstrated any type of sovereign land use application that would take a different form.

decision that Friends lacks standing to challenge—in particular, the decision to grant the Corporation's lease application. On the other hand, we find in the record of decision a final agency action that Friends does have standing to challenge. To the extent Friends is challenging the agency's decision that no further planning was required, we hold that Friends has standing to pursue its petition for consistency review. And we reverse and remand to allow for further proceedings on that narrow question.

¶37 The threshold question here concerns the proper interpretation of the record of decision. Friends claims that the record of decision "represents the culmination of th[e] planning effort" required by the Administrative Code. *Friends' Brief* at 26–27. And because Friends views the Division's analysis of the Corporation's lease application as site-specific planning, it claims that it has standing to challenge the record of decision in its entirety in its petition for consistency review.

¶38 We view the matter differently. We concede that the Division's *analysis* of the question whether to grant the lease to the Corporation was to some degree *site-specific*.[14] The record of decision reflects the Division's public trust analysis, consultation with experts, tour of the site, interviews with local workers about how the area was used by wildlife, analysis of lake resources, and assessment of the degree of conformity with the Mineral Leasing Plan. And on each of those questions, the Division's analysis was to a large degree *site-specific*. But the question presented is not whether the Division engaged in site-specific *analysis*; it is whether it engaged in "site-specific plan[ning]." UTAH ADMIN. CODE r. 652-90-200(3). And we find no basis in the record or in governing law for the conclusion that the Division's actions amounted to site-specific *planning*.

---

[14] For instance, Friends notes that "the Division toured the site . . . [and conducted] informal interviews . . . with the workers [to] garner[] some information on wildlife use of the area." *Friends' Reply Brief* at 10.

¶39 The record undermines Friends' assertion that the Division was engaged in site-specific planning. We find only two references to *planning* in the record. Both are to *plans* (expressly denominated as such) that predated the Division's record of decision—the comprehensive management plan and the mineral leasing plan. The record of decision, moreover, expressly disclaims that the Division is engaged in any site-specific planning.

¶40 To a large extent, the record of decision is merely a reflection of an informal adjudication approving the Corporation's lease. And Friends lacks standing to challenge that informal adjudication.

¶41 Only "[a]n aggrieved party to a final action by the director [of the Division] may appeal that action to the executive director of the Department of Natural Resources." UTAH CODE § 65A-1-4(4)(a). And Friends lacks statutory standing to challenge the lease decision because it was not a party to the agency's informal adjudication. By statute, a "party" to an adjudication includes only "the agency or other person commencing an adjudicative proceeding, all respondents, all persons permitted by the presiding officer to intervene in the proceeding, and all persons authorized by statute or agency rule to participate as parties in an adjudicative proceeding." *Id.* § 63G-4-103(1)(f). Friends cannot qualify as a party under this definition—it wasn't the "agency or other person commencing an adjudicative proceeding," it wasn't a respondent, it wasn't authorized by statute or rule to participate, and it didn't seek to convert the informal adjudication into a formal one and seek to intervene. *See id.* 63G-4-203(1)(g) (prohibiting intervention in informal adjudications unless required by federal or state law).

¶42 But that conclusion is not the end of the road for Friends. Because the Division was legally required to engage in site-specific planning in these circumstances, the record of decision did render a final agency action beyond the decision to grant the lease (via an informal adjudication): The Division concluded (implicitly but erroneously) that it was not required to engage in any site-specific planning as a result of the Corporation's lease

application. And Friends has standing to the limited extent that it is seeking to challenge that decision.

¶43  By rule "any party aggrieved by . . . a division action" has standing to petition for consistency review of any final action that "directly determin[es] the rights, obligations, or legal interests of specific persons outside of the division." UTAH ADMIN. CODE r. 652-9-200(1). And a party is "aggrieved" and thus has standing if it can show that it has suffered a particularized injury in fact that is traceable to the agency action and redressable by a decision in its favor. *See Utah Chapter of the Sierra Club v. Utah Air Quality Bd.*, 2006 UT 74, ¶¶ 19–23, 148 P.3d 960.

¶44 Friends has established its standing to challenge the Division's conclusion that it was not required to conduct additional planning prior to adjudicating the Corporation's lease application under the above standards. That decision was a final one. And the decision to decline to engage in site-specific planning was a step that led to the determination of the legal interests of the Corporation. Friends, moreover, has adequately established that it was aggrieved by the Division's action. Throughout the proceedings, Friends has identified a particularized injury arising from the Division's failure to comply with its own planning obligations—namely the impact of the approved lease on its members' recreational and aesthetic interests in the leased land.

¶45  To this limited extent we find that Friends has standing to pursue its petition for consistency review. Yet we underscore the limited nature of our decision. The record of decision encompasses two agency actions: (a) a final decision by the Division that it had fulfilled its planning obligations under controlling regulations and (b) an informal adjudication of the Corporation's lease application. Friends has standing only to challenge the first of these two decisions. And we reverse and remand to allow it to pursue its petition on only that issue.

¶46 On remand the question for the Department will be the appropriate remedy for the failure to engage in the required site-specific planning. Thus, we are not opening the door to a challenge by Friends of the merits of the decision to approve the

Corporation's lease application. We conclude only that the record of decision as it stands does not engage in site-specific planning as required by governing regulations. And we leave it to the Department in the first instance to decide on the appropriate remedy for that omission.[15]

2. Request for Agency Action

¶47 Next we consider the district court's affirmance of the Department's and Division's denial of Friends' request for agency action. Friends asked the Division to "redo" its analysis or "undertake site-specific analysis" in light of the Division's responsibilities to protect the public trust, to determine how the leases should be changed, and to "implement those changes." *Request for Agency Action* at 3. The district court found no legal basis for Friends' request for agency action. It concluded that "the filing of a Request for Agency Action does not confer on the Petitioners[] the status of party or interven[o]r in the [record of decision] proceedings." *Memorandum Decision and Ruling*, at 7 (Sept. 10, 2010). On these bases the district court upheld the Department's and Division's denial of Friends' request for agency action.

¶48 We affirm. Under state law "persons other than the agency [may] initiate adjudicative proceedings" only "[w]here the law applicable to the agency [so] permits." UTAH CODE § 63G-4-201(3)(a). And "[r]equests for [agency] action" are limited to "applications for leases, permits, easements, sale of sovereign

---

[15] At the risk of being over- or under-inclusive, and recognizing that the question is not presented to us on this appeal and is thus for the Department in the first instance, the possible remedies may include a new proceeding in which site-specific planning is performed anew or the issuance of an amended record of decision. But we offer these only as examples—illustrations of the scope of our remand—and without any intent to direct the outcome or the remedy to be adopted by the Department. Perhaps the Department will identify a different remedy; our opinion should not be deemed to foreclose such a course of action.

lands, exchange of sovereign lands, sale of forest products and any other disposition of resources under the authority of the agency or other matter where the law applicable to the agency permits parties to initiate adjudicative proceedings." UTAH ADMIN. CODE r. 652-8-200(1).

¶49 Friends' agency action sought none of the above. It was essentially a request for an adjudication challenging someone else's adjudication. Friends' request for agency action, in other words, was a collateral attack on the approval of the Corporation's lease. And our law makes no provision for this sort of agency action.

¶50 It is true, as Friends notes, that UAPA allows "persons other than the agency," UTAH CODE § 63G-4-201(1)(b), to commence an adjudicative proceeding "[w]here the law applicable to the agency permits persons other than the agency to initiate adjudicative proceedings." *Id.* § 63G-4-201(3)(a). But the referenced "law applicable to the agency" is not UAPA. It is the law governing *the agency*—here, the Division of Forestry, Fire, and State Lands. That law appears in Title 65A of the Code and in related provisions of the administrative code and governing caselaw. And nothing in that law authorizes the agency action filed by Friends.

¶51 A contrary conclusion would view UAPA as authorizing an end-run around the limitations on agency action appearing in Title 63G, Chapter 4 of the Code and in implementing regulations. Those provisions, as noted, prohibit intervention in informal adjudications, *id.* § 63G-4-203(1)(g), and place careful limitations on the sorts of agency actions that may be filed, UTAH ADMIN. CODE r. 652-8-200(1). Friends' approach would eviscerate these limitations. We see no basis for that approach in the terms of the operative law.

3. Agency Declaratory Order

¶52 Friends also sought to block approval of the Corporation's mining lease by filing a request for a declaratory order. The requested order was one concluding that the Division had failed to comply "with its statutory and regulatory Public Trust and planning obligations relative" to the lease under the Utah

Constitution, the Division's statutory authority to manage sovereign lands, and the Division's planning regulations. *Petitioner's Memorandum in Support* at 40 (Apr. 27, 2009). In support of its request for such an order, Friends pointed to a UAPA provision stating that "[a]ny person may file a request . . . that the agency issue a declaratory order determining the applicability of a statute, rule, or order within the primary jurisdiction of the agency to specified circumstances." UTAH CODE § 63G-4-503(1).

¶53 The district court affirmed the Division's and the Department's denial of the request for such an order. We likewise affirm. UAPA limits a party's ability to seek and receive a declaratory order in at least three ways. And any one of these three is fatal to Friends' request.

¶54 First, the Division "may issue a declaratory order that would substantially prejudice the rights of a person who would be a necessary party, *only* if that person consents in writing to the determination of the matter by a declaratory proceeding." *Id.* 63G-4-503(3)(b) (emphasis added). As the district court found, the Corporation's rights would be substantially prejudiced if Friends prevailed—its lease has been granted, and it presumably has relied on that decision. And Friends is also challenging some of the Corporation's existing leases—leases it has held for two decades or longer. The Corporation would be a necessary party to an order that would potentially relinquish its rights. And since the Corporation did not consent in writing to a declaratory proceeding on the matter, Friends cannot request it. That alone defeats Friends' petition.

¶55 Second, as the district court noted, Utah Administrative Code Rule 652-7-500 requires that a petition for declaratory action "be denied if . . . the specified facts, issue situation, or circumstance is based on disputed facts." UTAH ADMIN. CODE r. 652-7-500(1)(a). The district court found that Friends' petition "challenged numerous facts, findings and conclusion of the Division." *Memorandum Decision and Ruling*, at 6 (Sept. 10, 2010). That also prevents the agency from issuing a declaratory order.

¶56 Finally, a petition for declaratory order must be denied when "the petition requests a ruling on an order other than an executed contract." UTAH ADMIN. CODE r. 652-7-500(1)(c). The district court found that the Corporation's lease had not yet been executed at the time when Friends filed its petition. That is a final barrier to Friends' request for a declaratory order.

## B. Amendments to Complaint

¶57 Friends filed a motion to add various constitutional and statutory claims in an amended complaint. The district court originally denied the motion as to some of the claims because they had not been raised before the agency. Initially, the court allowed other claims to be added. But it later determined that it lacked subject matter jurisdiction over the remaining claims as well, and thus dismissed them.

¶58 We affirm. None of the claims that Friends sought to add in its motion for leave to amend were preserved in the underlying administrative proceedings. And that bars Friends from raising them here. *See Nebeker v. Utah State Tax Comm'n*, 2001 UT 74, ¶ 20, 34 P.3d 180 (holding that "parties must raise constitutional claims in the first instance before the agency"); *Taylor-West Weber Water Improvement Dist. v. Olds*, 2009 UT 86, ¶ 12, 224 P.3d 709 ("Only those issues that were brought to the factfinder's attention at the administrative level may be litigated in the de novo *review* in the district court." (emphasis added)).

¶59 Friends filed a statutory proceeding for judicial review under UAPA, Utah Code section 63G-4-402(1)(a). In so doing it invoked the district court's jurisdiction under Utah Code section 78A-5-102(7)(a). Friends' action was accordingly limited to *review* of the administrative action. *See* UTAH CODE § 63G-4-402(1)(a) (authorizing action "to review by trial de novo all final agency actions resulting from informal adjudicative proceedings"); *id.* § 78A-5-102(7) (authorizing jurisdiction of district court "to review[] agency adjudicative proceedings as set forth in Title 63G, Chapter 4, Administrative Procedures Act"). And *review* implies an analysis of the claims and defenses raised in the proceeding under review. Friends' failure to preserve the claims in question is

accordingly preclusive of its attempt to assert them in an amended complaint.

¶60 In so holding we need not and do not foreclose the possibility of a *future* filing by Friends invoking the district court's original jurisdiction under Utah Code section 78A-5-102.[16] Our point is only that this action is not such a proceeding. This is an action for judicial review of final agency action, and in such a proceeding Friends' additional, unpreserved claims are foreclosed.

¶61 That conclusion also obviates the need for us to resolve the question whether the Public Trust Clause[17] of the Utah Constitution is "self-executing." Friends asserts that it is. And it contends that that conclusion sustains its right to assert its public trust claim in this proceeding. We reject Friends' position without rendering an opinion on the self-executing nature of the Public Trust Clause.

¶62 To say that a constitutional provision is self-executing is to conclude only that it is judicially enforceable in the absence of statutory authority for a private claim. *See Spackman v. Bd. of Educ. of Box Elder Cty. Sch. Dist.*, 2000 UT 87, ¶ 8, 16 P.3d 533. But judicial enforceability is only one piece of the puzzle. Friends must also establish the district court's jurisdiction to hear its claim. We affirm the denial of the motion for leave to add a public trust claim on that jurisdictional basis. We do so because Friends filed only a petition for review of an administrative proceeding under Utah Code section 63G-4-402(1)(a) and failed to assert an

---

[16] Nor do we endorse such a future filing. The question whether such a filing would be precluded—under the doctrine of *res judicata* or otherwise—is not before us. So we simply flag the issue without rendering an opinion on it.

[17] *See* UTAH CONST. art. XX, § 1 ("All . . . public lands of the State . . . shall be held in trust for the people, to be disposed of as may be provided by law, for the respective purposes for which they have been or may be granted, donated, devised or otherwise acquired.").

independent public trust claim in the underlying administrative action, thus failing to preserve a right to litigate a public trust claim in the district court action for judicial review. We accordingly affirm without deciding whether the Public Trust Clause is self-executing.

### C. Amendment to 2000 Comprehensive Management Plan

¶63 The Division's director denied Friends' petition for the Division to amend the 2000 comprehensive management plan based on a lack of "unforeseen circumstances" as required by Utah Administrative Code Rule 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. Friends challenged that decision in the district court. And the court dismissed the challenge as moot, concluding that the 2000 plan had been superseded and replaced by a new plan adopted in 2013.

¶64 We affirm. The district court's mootness determination is not challenged in Friends' briefs—not in the opening brief and not in the reply brief. The opening brief mentions the mootness determination twice—once in the statement of the case and once in articulating an applicable standard of review. But there is no analysis of this issue in the argument section. And even after appellees noted this deficiency in their brief, Friends still failed to address it in the reply brief. That is fatal to Friends' position on appeal.

¶65 Friends cannot carry its burden of persuasion when it has failed to address an issue in its briefing. *See State v. Roberts*, 2015 UT 24, ¶ 18, 345 P.3d 1226 (noting that the court's "adequate briefing requirement is . . . a 'natural extension of an appellant's burden of persuasion'" (citation omitted)). The district court's decision stands in the absence of any attempt by Friends to challenge it in the opening brief.

### D. Extraordinary Relief

¶66 Friends seeks extraordinary relief as an alternative basis for the remedies it seeks on appeal. Its argument is based on language in our opinion in *Friends I*, *Friends of Great Salt Lake v. Dep't of Nat. Res.*, 2010 UT 20, 230 P.3d 1014. There we rejected a petition for extraordinary relief on the ground that Friends still had failed to "exhaust[] all available avenues of appeal"—specifically, in further proceedings in the district court. *Id.* ¶ 23. Friends takes a

negative implication from our conclusion in *Friends I*. It asserts that it should be entitled to extraordinary relief because it now has "no other plain, speedy and adequate remedy" available to it. UTAH R. CIV. P. 65B(a).

¶67 We disagree for two reasons. First, Friends still has access to a traditional avenue of review given our decision to reverse and remand (to a limited degree) on the petition for consistency review. So to that extent, our conclusion in *Friends I* still stands. Second, to the extent Friends is seeking extraordinary relief as an end-run around barriers to traditional review of its claims, we decline to exercise our discretion to provide such relief.

¶68 The exhaustion of "available avenues" of judicial relief is by no means the only prerequisite to the issuance of an extraordinary writ. Extraordinary relief is discretionary. *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Lindberg*, 2010 UT 51, ¶ 24, 238 P.3d 1054. "[A] petitioner seeking rule 65B(d) extraordinary relief has no right to receive a remedy that corrects a lower court's mishandling of a particular case." *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 2012 UT 66, ¶ 18, 289 P.3d 502 (citation omitted). Thus, we may elect not to issue an extraordinary writ even if we disagree with a lower court decision on its merits. *Id*. In deciding whether to issue such a writ "we may consider a variety of factors such as 'the egregiousness of the alleged error, the significance of the legal issue presented by the petition, the severity of the consequences occasioned by the alleged error, and additional factors.'" *Snow, Christensen & Martineau v. Lindberg*, 2013 UT 15, ¶ 22, 299 P.3d 1058 (quoting *State v. Barrett*, 2005 UT 88, ¶ 24, 127 P.3d 682). Friends' principal gripe is that the district court failed to reach claims and issues not presented in the administrative case below. And, having now fulfilled the responsibility of exhausting its right to litigate those issues in the district court, Friends invites us to consider them for the first time through our discretionary power to issue an extraordinary writ. This we decline to do. Friends *had* a means of asserting each and every one of its claims in the ordinary course of litigation in the district court. Some of those claims were dismissed by the district court and affirmed in our decision on this appeal. Others are not properly before us because they were

not preserved in the underlying administrative proceeding. But Friends could have sought to preserve those claims in the first instance. And it may not invoke our extraordinary relief jurisdiction by means of its own missteps in litigation. *See Anderson v. Baker*, 296 P.2d 283, 286 (Utah 1956) ("If there was once an adequate remedy by an appeal and the party permits it to lapse, he does so at his peril. Certainly to hold that extraordinary writs will issue . . . because there is error, would largely be destroying the rules requiring timely appeal." (citation omitted)).

¶69 We deny Friends' request for extraordinary relief on these grounds.

---